# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

PATRICIA BIEDERMAN, as the successor
and representative of the Estate of
Dennis Gruen,
     Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 1:20-cv-356

Black, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Patricia Biederman[1] brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying Dennis Gruen's application for disability insurance benefits ("DIB").

This matter is before the Court on plaintiff's Statement of Errors (Doc. 14), the Commissioner's

response in opposition (Doc. 21), and plaintiff's reply memorandum (Doc. 22).

## I. Procedural Background

Gruen filed his application for DIB in August 2016, alleging disability since June 11,

2016, due to major depression, bi-polar disorder, Attention Deficit Disorder ("ADD"), anxiety,

panic attacks, sleep problems, Tinnitus (hearing reduced to 1/3rd of normal hearing), broken

neck, arthritis in broken neck and shoulder, and shoulder reconfigured during surgery.  The

application was denied initially and upon reconsideration.  Plaintiff, through counsel, requested

and was granted a *de novo* hearing before administrative law judge ("ALJ") Robert W. Flynn.

Gruen, Nancy Gruen (Gruen's wife), and a vocational expert ("VE") appeared and testified at the

ALJ hearing on February 12, 2019.  On May 21, 2019, the ALJ issued a decision denying

---

[1] Patricia Biederman is the legal representative of the estate of Dennis Gruen and was substituted as the plaintiff in
this matter pursuant to Fed. R. Civ. P. 25(a).  (Doc. 29).  The Court will refer to Dennis Gruen as "Gruen"
throughout the report and recommendation.

Gruen's DIB application. This decision became the final decision of the Commissioner when the Appeals Council denied review on March 14, 2020.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since June 11, 2016, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: multi-level cervical, thoracic and lumbar-sacral degenerative disc disease with osteophytes, facet joint hypertrophy, sclerosis, arthrosis, disc protrusions, and spondylosis; cervical, thoracic and lumbar sprain/strain; thoracic syndrome; osteoarthritis and tendinopathy of the right shoulder, status-post arthroscopic debridement, decompression and ligament release; pelvis peritendonitis; bilateral hip chondromalacia; depressive disorder; bipolar disorder; anxiety disorder; panic disorder; and history of remote traumatic brain injury with residual dementia/neurocognitive disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) [] except he is able to lift up to 20 pounds occasionally, lift/carry up to 10 pounds frequently, stand/walk for approximately 6 hours and sit for approximately 6 hours during an 8-hour workday, with a 15 minute break every 2 hours and a 30-minute lunch break. He is able to push/pull within the above restrictions, and operate foot controls occasionally. The claimant is not able to climb ladders, ropes or scaffolds, but is able to climb ramps or stairs occasionally. He is able to balance, stoop, crouch, and kneel occasionally, but is not able to crawl. In addition, with his right upper extremity, the claimant is able to reach

3

frequently, but is able to reach overhead only occasionally. He is able to handle, finger and feel objects frequently. The claimant must avoid concentrated exposure to vibration, extreme cold, wetness, poorly ventilated areas, and environmental irritants, such as fumes, odors, dust, chemicals, and gases. He must avoid all exposure to hazards, such as unprotected heights, the use of moving machinery and commercial driving. Further, the claimant is limited to work that involves simple, routine and repetitive tasks, which do not require the ability to maintain attention or concentration for more than 2 hours at a time. Moreover, he is limited to work performed in a low-stress environment, defined as free of fast-paced production requirements, involves only simple work-related decisions, few workplace changes, changes can be explained in advance, no interaction with the general public, and no more than occasional interaction with coworkers and supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).[2]

7. The claimant was born [in] . . . 1965 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404 Subpart P. Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can performed (20 CFR 404.1569 and 404.1569(a)).[3]

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 11, 2016, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 23-68).

---

[2] Gruen's past relevant work was a Customer Service Representative, a sedentary skilled position performed at the medium exertional level. (Tr. 67, 173).

[3] The ALJ relied on the VE's testimony to find that Gruen would be able to perform the requirements of representative light, unskilled occupations such as sorter (90,000 jobs in the national economy), packer (150,000 jobs in the national economy), and cleaner (100,000 jobs in the national economy). (Tr. 68, 175-76).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D.  Specific Errors

On appeal, plaintiff alleges five issues: that the ALJ erred by (1) failing to assess Gruen's individualized reaction to stress and the mental impairments; (2) finding that Gruen could frequently reach and handle at Step Five of the sequential evaluation process; (3) improperly weighing the medical opinions; (4) failing to evaluate Gruen's subjective allegations of pain and limitations; and (5) relying on answers to improper hypothetical questions posed to the VE. (Doc. 14).  For the following reasons, the undersigned recommends that the ALJ's decision be **AFFIRMED** and that this matter be closed on the docket of the Court.

### 1.  The ALJ's weighing of the medical opinions of record is supported by substantial evidence (third assignment of error).

In the third assignment of error, plaintiff alleges that the ALJ erred in the evaluation of the "medical and psychological sources."  (Doc. 14 at PAGEID 1377-79).  Specifically, plaintiff alleges that the ALJ erred by giving little weight to the opinions of "Dr. Yuellig at Tr. 998-1006 in February, 2018; Dr. Grefer in January, 2019 at Tr. 1286-1287; the mental health opinion in November, 2018 at Tr. 1191-1193[;] and the treating chiropractor at Tr. 1245-1247."  (*Id*. at PAGEID 1378).  The Commissioner generally argues that substantial evidence supports the ALJ's weighing of the medical opinion evidence of record.  (Doc. 21 at PAGEID 1440-50).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight.[4]  Under the treating physician rule, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. . . ."  *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544.  The rationale for the rule is that treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's]

---

[4]  20 C.F.R. § 404.1527, which sets out the treating physician rule, has been amended for claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  This amendment does not apply to plaintiff's claim, which was filed in August 2016.  (*See* Tr. 21).

medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Rogers*, 486 F.3d at 242.

A treating source's medical opinion must be given controlling weight if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). If a treating source's medical opinion is not entitled to controlling weight, the ALJ must apply the following factors in determining what weight to give the opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544. *See also Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4) ("Treating source medical opinions [that are not accorded controlling weight] are still entitled to deference and must be weighed using all of the factors provided in" 20 C.F.R. § 404.1527(c)).

In addition, an ALJ must "give good reasons in [the] notice of determination or decision for the weight [given to the claimant's] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2). The ALJ's reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). This requirement serves a two-fold purpose: (1) it helps a claimant to understand the disposition of the case, especially "where a claimant knows that his physician has deemed him disabled," and (2) it

"permits meaningful review of the ALJ's application of the [treating-source] rule." *Wilson*, 378 F.3d at 544.

At the outset, plaintiff has waived any argument pertaining to the ALJ's weighing of the opinions from Dr. Thomas Yuellig, Gruen's treating primary care provider, by failing to develop it either legally or factually in his Statement of Errors. Dr. Yuellig's treatment notes and corresponding medical opinions comprise numerous pages of the medical record. (*See* Tr. 769-90; 809-14; 884-940; 1002-06). The ALJ's forty-eight-page decision consists of a detailed and comprehensive evaluation of Gruen's medical history during the alleged period of disability (Tr. 21-69) and specifically includes a thorough discussion of each treatment note from Dr. Yuellig. (*See* Tr. 24, 30-33, 36, 40-41, 43, 45, 48, 55-58). Plaintiff, however, asserts in two sentences that the ALJ erred in evaluating Dr. Yuellig's opinions: "Dr. Yuellig is competent to give an opinion regarding the nervous impairments, as specialization is only one factor to consider under 404.1527(c)(5). In addition, a primary care doctor must be aware of mental and nervous impairments to effectively treat a patient." (Doc. 14 at PAGEID 1378).

"It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). *See also Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument challenging an ALJ's non-disability determination amounts to a waiver of that argument). Plaintiff failed to develop this argument legally or factually, provide any analysis, or cite to any specific treatment notes or reasons as to why plaintiff believes the ALJ committed error. Therefore, any such argument is waived.[5] *See Kuhn*

---

[5] The Court notes, however, that plaintiff's assignment of error concerning the ALJ's weighing of Dr. Yuellig's opinions would also fail on the merits because the ALJ fully complied with 20 C.F.R. § 404.1527(c) and the ALJ's decision is supported by substantial evidence. (*See* Tr. 55-58).

*v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013) (internal citations omitted) (emphasis added) (The Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, *as well as arguments adverted to in only a perfunctory manner*, are waived").

Likewise, plaintiff has waived any argument pertaining to the ALJ's weighing of the opinions from psychiatric mental health nurse practitioner Jamie Becker and Chiropractor Lawrence Mikkelson.  As best the Court can discern, plaintiff alleges that Ms. Becker was a "treating source" and the ALJ therefore erred by giving little weight to her November 2018 assessment.  (Doc. 14 at PAGEID 1378).  Plaintiff alleges this assessment form shows Gruen "had poor or no abilities in many work-related areas."  (*Id*. at PAGEID 1373, citing Tr. 1191-1193).  However, plaintiff fails to explain how the ALJ erred in evaluating the assessment completed by Ms. Becker.  Plaintiff wholly fails to address the reasons given by the ALJ for giving little weight to Ms. Becker's opinion, including the ALJ's findings that Ms. Becker's clinical findings were inconsistent with her November 2018 opinion; that her opinion conflicted with the findings of Drs. Collins, Bakhtier and Yuellig and Ms. Kathman, Ms. Dawson, and Mr. Owens; and that the extreme mental functional limitations assessed by Ms. Becker were inconsistent with the lack of any in-patient mental health care treatment or lack of a recommendation for such treatment.  (Tr. 63-64).  Therefore, plaintiff's argument pertaining to the ALJ's weighing of Ms. Becker's assessment is waived.

Similarly, plaintiff has waived any argument concerning the ALJ's weighing of the assessment completed by Chiropractor Mikkelson.  Plaintiff argues that the ALJ erred in evaluating Mr. Mikkelson's assessment because it is "consistent with the work-related limitations of Dr. Yuellig and Dr. Grefer."  (Doc. 14 at PAGEID 1379).  Aside from this single conclusory statement, plaintiff fails to support this argument with any analysis or citations to the

9

record. Nor does plaintiff address the specific and detailed reasons posited by the ALJ for giving little weight to the chiropractor's assessment of plaintiff's mental impairments. (Tr. 64). Accordingly, plaintiff has waived any argument concerning the ALJ's evaluation of the assessment completed by Mr. Mikkelson.

Plaintiff next argues that the ALJ erred in giving "little weight" to the opinion of "Dr. Grefer in January, 2019 at Tr. 1286-1287." (Doc. 14 at PAGEID 1378). Without any citation to the medical record, plaintiff argues that Dr. Grefer "supported his work-related limitations with a number of positive objective findings—restricted range of motion, tenderness, sensation problems, and nerve root problems from the low back into the legs and feet." (*Id.*). Plaintiff also points to Dr. Grefer's specialization as an "orthopedic specialist" and argues the ALJ failed to give "good reasons" for discounting Dr. Grefer's opinion. (*Id.* at PAGEID 1378-79). Again, plaintiff fails to address the actual reasons cited by the ALJ when weighing Dr. Grefer's opinion, and a review of the record shows those reasons are supported by substantial evidence.

Gruen began treating with Dr. Michael Grefer on July 10, 2017. (Tr. 1127). On that day, Gruen reported neck and upper extremity issues, pain, and numbness since a "roll over accident in 1991" which occurred while Gruen was in the military. (*Id.*). Gruen complained of "increasing and persistent problems . . . down the right leg and in the hip all the way to his right big toe." (*Id.*). Gruen reported that he saw a chiropractor and one of his vertebrae was fractured. (*Id.*). Gruen felt like he was "in two pieces" and reported that he had "ongoing issues with the right leg and both upper extremities," he had thoracic pain, and he felt like his ribs were out of place. (*Id.*). On examination, Dr. Grefer reported that Gruen was well-developed and in no acute distress; he was alert and oriented to place and time with appropriate mood and affect; he had full respirations, no respiratory deficits, and no pathologic nodes or masses; he had no

circulatory deficits in the upper or lower extremities; he was coordinated and had no obvious

spasticity; he had no obvious chest or cardiovascular abnormalities, no adnominal distention, and

the overall sensation was normal to palpation and showed no major deficits. (*Id.*).

Dr. Grefer reported that Gruen's cervicothoracic and thoracolumbar spine range of

motion was mildly limited. (Tr. 1129). Gruen, however, had full range of motion in his bilateral

shoulders, elbows, wrists, and hands; he had mild crepitus in his bilateral shoulders, 4-5/5

strength in his bilateral shoulders, and 5/5 strength in his bilateral elbows, wrists, and hands; and

he had no crepitus and normal range of motion and strength in the lower extremities. (*Id.*).

Dr. Grefer noted that Gruen's x-rays showed cervical spondylosis, some wedging of the

mid thoracic and thoracolumbar segments, mild scoliosis, and degenerative disease and

degenerative disc disease. (Tr. 1128). Dr. Grefer diagnosed Gruen with cervical, thoracic, and

lumbar strain and sprain, possible occult fracture, and neuropathy versus radiculopathy. (*Id.*).

Dr. Grefer ordered an electromyography/nerve conduction velocity test ("EMG/NCV") (*Id.*),

which showed no abnormalities or any "significant pathology." (Tr. 1132-35; 1136).

On August 22, 2017, Gruen presented to Dr. Grefer for a follow up appointment

complaining of pain and tenderness in the right shoulder and right side of the scapular area and

pain in the neck, shoulder, entire spine, and the right hip all the way down the right leg. (Tr.

1136). Dr. Grefer noted that Gruen had an "old injury going on in the neck area." (*Id.*). Dr.

Grefer reported that a bone scan showed "no signs of any significant pathology or bony issues."

(*Id.*). The bone scan, however, showed "some uptake in the mandible" that "may be some

contamination." (*Id.*). Dr. Grefer referred Gruen to a dentist and recommended cross sectional

imaging, an MRI scan, or a CT scan at a later time. (*Id.*). Dr. Grefer diagnosed Gruen with

cervical, thoracic, and lumbar strain and sprain and referred Gruen to physical therapy. (*Id*.; Tr. 1138).

On February 23, 2018, Gruen presented for a follow up appointment with Dr. Grefer. (Tr. 1139). Gruen stated that he had pain in his right leg, right hip, and down into the outside of the leg and into the foot. (*Id*.). Dr. Grefer noted that Gruen used to work for Social Security and "retire[d]." (*Id*.). On examination. Dr. Grefer reported that Gruen had right trochanteric pain and pain in the hip and thigh area; he had pain that radiated down the lateral aspect of the leg suggestive of SI nerve root issue; and he had total body, episacral, and pubic pain. (*Id*.). Dr. Grefer ordered another EMG/NCV and a bone scan to understand "what is going on with the hip, pelvis, and SI joint areas." (*Id*.).

On August 22, 2018, Gruen presented to Dr. Grefer with "multiple complaints and multiple issues" such as pain in the neck, back, right hip, and right groin. (Tr. 1238). Dr. Grefer noted that Gruen had a small cystic area at the base of the skull that had not appreciably changed. (*Id*.). On physical examination, Dr. Grefer reported that Gruen was well-developed and in no acute distress; he was alert and oriented times three with appropriate mood and affect; he had full respirations, no respiratory deficits, and no pathologic nodes or masses; he had no circulatory deficits in the upper or lower extremities; he was coordinated and had no obvious spasticity; he had no obvious chest or cardiovascular abnormalities, and no adnominal distention. (*Id*.). Dr. Grefer stated that Gruen had mild asymmetry of the right hip range of motion; he had total body pain; and he had pain in the ball of the foot and right hip and lower leg dysfunction. (Tr. 1239).

Dr. Grefer also reported that Gruen had mildly limited range of motion and mild spasms in the cervicothoracic and thoracolumbar spine; he had normal range of motion in his bilateral shoulders, elbows, wrists, hands, knees, ankles, and left hip and normal to mildly limited range

of motion in his right hip; he had normal reflexes in his bilateral biceps and knees but low normal/diminished reflexes in his bilateral radial and triceps; he had no crepitus in the bilateral elbows, wrists, hands, knees, ankles, left hip and mild crepitus in the bilateral shoulders and right hip; and he had 4-5 strength in the right knee, ankle, and hip and 5/5 strength in the bilateral shoulders, elbows, wrists, and hands.  (Tr. 1240).

Dr. Grefer stated that X-rays showed some mild asymmetry of the sacroiliac joints, mild acetabular and supraacetabular sclerosis that is more apparent on the right side than the left with some mild pelvic asymmetry, straightening of the normal cervical lordosis with cervical spondylosis, and no signs of any obvious fractures or dislocations.  (Tr. 1239).  Dr. Grefer ordered a bone scan and EMG/NCV of Gruen's right lower extremities.  (*Id.*).

Gruen saw Dr. Grefer for a follow up appointment on November 30, 2018.  (Tr. 1241). The record indicates that the November 30, 2018 treatment note is the last examination note of record between Gruen and Dr. Grefer.  On this date, Dr. Grefer reported that Gruen had not yet begun therapy, continued to have neck issues, and had pain going down in his ischial area and pain that went up into the neck and right shoulder down into the arm.  (*Id.*).  Dr. Grefer diagnosed Gruen with cervical, thoracic, and lumbar strain and sprain and peritendinitis of the pelvis.  (*Id.*).  Dr. Grefer's physical examination findings were identical to Gruen's August 22, 2018 examination.  (*See* Tr. 1240, 1242).

On January 8, 2019, Dr. Grefer wrote a letter on behalf of Gruen.  (Tr. 1286-87).  Dr. Grefer stated that Gruen had "multiple orthopaedic problems including cervical spine; thoracic spine; lumbosacral spine; degenerative disease and degenerative disc disease of the cervical, thoracic, and lumbar spine; cervical and lumbar radiculopathy; right shoulder; bilateral hips; and degenerative problems affecting multiple joints including the neck, back, shoulder, hips, knees,

13

etc. In addition to his orthopaedic conditions, Mr. Gruen has a history of multiple psychological issues including depression, anxiety, neurocognitive disorder due to traumatic brain injury with behavioral disturbance and cognitive changes, inability to tolerate stress, pain management problems, panic attacks, mood swings, etc." (Tr. 1286). Dr. Grefer opined that Gruen's "multiple orthopaedic problems combined with his severe medical and psychological conditions render him totally disabled from all work and unable to perform any type of gainful employment." (Tr. 1287).

On that same day, Dr. Grefer completed a check-off form assessment on behalf of Gruen in which he opined: "Due to Mr. Gruen's multiple orthopaedic conditions in combination with his medical conditions, he is totally disabled from all gainful [e]mployment." (Tr. 1288). In addition, Dr. Grefer opined that Gruen could frequently lift/carry zero to three pounds and occasionally lift/carry five pounds; he could stand/walk twenty minutes at a time without interruption up to one to two hours in an eight-hour workday and could sit up to one hour at a time for a total of four to five hours during an eight-hour workday; and he could never climb, kneel, crouch, stoop, balance, or crawl. (Tr. 1288-89). Dr. Grefer opined that reaching, handling, feeling, and pushing/pulling were affected by Gruen's impairments and would result in increased pain and problems. (Tr. 1289). Dr. Grefer opined that Gruen was restricted from exposure to heights, moving machinery, and vibration. (Tr. 1290).

The ALJ afforded "little weight" to Dr. Grefer's opinions because Dr. Grefer's (1) finding of disability was an issue reserved for the Commissioner; (2) opinions were in part based on psychological issues which is an area outside of his area of specialty; (3) opinions were not well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (4) opinions were inconsistent with other substantial evidence of record. (Tr. 59-61). The ALJ gave

14

comprehensive reasons for discounting Dr. Grefer's opinions and those reasons are substantially supported by the record.

First, the ALJ reasonably concluded that Dr. Grefer's opinion that Gruen was "totally disabled from all work and unable to perform any type of gainful employment" (Tr. 1287; *see also* Tr. 1288) amounts to an issue reserved to the Commissioner based on Social Security rules and regulations. (Tr. 60). Whether a person is disabled within the meaning of the Social Security Act, i.e., unable to engage in substantial gainful activity, is an issue reserved to the Commissioner, and a medical source's opinion that his patient is "disabled" or "unable to work" is not "giv[en] any special significance." 20 C.F.R. § 404.1527(d)(3). *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (opinion by medical source on issues reserved to Commissioner is never entitled to controlling weight or special significance); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Therefore, the ALJ reasonably found that Dr. Grefer's opinion that Gruen would be unable to sustain employment is not entitled to any weight.

Second, the ALJ reasonably concluded that Dr. Grefer's opinion was entitled to little weight because his opinions were, in part, based on issues outside his area of specialty. (Tr. 60). Specifically, Dr. Grefer practices orthopaedic medicine and his opinion on Gruen's psychological and mental health functioning is therefore outside the area of his expertise and his specialty. *See* 20 C.F.R. § 404.1527(c)(5).

Moreover, the ALJ reasonably discounted Dr. Grefer's opinions on the basis that Dr. Grefer "never observed [Gruen] to show any type of psychological abnormality." (Tr. 60). The ALJ thoroughly reviewed the entirety of Dr. Grefer's treatment notes and found no mention of any type of psychological abnormality. (Tr. 60-61). *See Gaskin v. Comm'r of Soc. Sec.*, 280 F.

15

App'x 472, 475 (6th Cir. 2008) ("Unlike the cases where [the Sixth Circuit has] held that the ALJ failed to state 'good reasons' for rejecting the treating physician's opinion, here the ALJ did not merely cast aside the treating physician's opinion without explanation."); *see also Alpajon v. Comm'r of Soc. Sec.*, No. 1:13-cv-617, 2014 WL 4626012, at \*5, 6 (S.D. Ohio Sept. 11, 2014) (the ALJ did not err in failing to give the treating physician's opinion controlling weight because the opinion was inconsistent with his own treatment notes as well as his interpretation of plaintiff's imaging studies). Specifically, the ALJ found that Dr. Grefer's treatment notes consistently revealed that Gruen was alert, fully oriented, and had appropriate mood and affect. (Tr. 59-61, 1127, 1238). Further, at no point did Dr. Grefer observe or report that Gruen suffered from any psychological abnormalities. (*See* Tr. 1127, 1132-37, 1139-40, 1238-42).

Third, the ALJ reasonably determined that Dr. Grefer's opinions were inconsistent with the other medical evidence of record, including his own clinical reports. (Tr. 61). This evidence substantially supports the ALJ's finding that Dr. Grefer's opinion was not entitled to controlling weight. Further, even where substantial evidence could support a different conclusion or where a reviewing court would have decided the matter differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012); *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999). The ALJ thoroughly reviewed the evidence of record and explained the "good reasons" for giving Dr. Grefer's opinion "little weight." Gruen has not cited any evidence to show the ALJ's analysis lacks substantial support. Accordingly, the Court recommends that plaintiff's third assignment of error be overruled. *See Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112-13 (6th Cir. 2010) (treating physician's opinion not entitled to controlling weight where it was inconsistent with his own prior reports and treatment notes); *see also Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547,

16

549-50 (6th Cir. 2014) (treating pain management specialist's opinion not entitled to controlling

weight where it was inconsistent with his treatment notes and results of imaging studies);

*Davidson v. Comm'r of Soc. Sec.*, No. 1:12-cv-683, 2013 WL 5670977, at *6-8 (S.D. Ohio Oct.

15, 2013), *report and recommendation adopted*, 2014 WL 1271023 (S.D. Ohio Mar. 27, 2014)

(ALJ's finding that treating physician's opinion was not supported by his own treatment notes

was substantially supported by the record).

### 2. The ALJ did not err at Step Five of the sequential evaluation process (second assignment of error).

In his second assignment of error, plaintiff alleges that the ALJ erred at Step Five of the

sequential evaluation process by finding Gruen could frequently reach and handle.  (Doc. 14 at

PAGEID 1376).  Plaintiff alleges that the ALJ erred by relying on older medical records and by

failing to note the worsening of Gruen's condition in 2017 and 2018.  (*Id.*).

The ALJ's RFC finding relating to Gruen's ability to reach and handle is supported by

substantial evidence.  A claimant's RFC is an assessment of the most that a claimant "can still do

despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).  The Social Security regulations vest the

ALJ with the responsibility of assessing an individual's RFC.  *See* 20 C.F.R. § 404.1546(c) (the

responsibility for assessing a claimant's RFC at the administrative hearing level lies with the

ALJ).  The ALJ is responsible for assessing a claimant's RFC based on all of the relevant

medical and other evidence.  20 C.F.R. § 404.1545(a)(3).  This includes weighing the relevant

medical opinions of record.  *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir.

2010).

Here, the ALJ's RFC finding, in pertinent part, provides: "In addition, with his [Gruen's]

right upper extremity, the claimant is able to reach frequently, but is able to reach overhead only

occasionally.  He is able to handle, finger and feel objects frequently."  (Tr. 26).  Plaintiff cites to

the August 16, 2017 EMG/NCV report (Tr. 1132-35), the November 30, 2018 treatment note

from Dr. Grefer (Tr. 1241), the January 8, 2019 treatment note from Dr. Yuellig (Tr. 1250-53),

and the January 18, 2019 medical assessment completed by Dr. Grefer (Tr. 1288-90) in support

of the argument that the ALJ erred in finding that Gruen could frequently reach and handle.

(Doc. 14 at PAGEID 1376).

Plaintiff first cites to the August 16, 2017 EMG/NCV report (Tr. 1132-35) and argues

that Gruen "had neck pain and numbness in the hands despite a negative EMG study." (Doc. 14

at PAGEID 1376). Plaintiff, however, does not explain how this EMG/NCV report casts doubt

on the ALJ's RFC finding. Moreover, nothing in the EMG/NCV report indicates that Gruen

suffered from any neck or hand impairments. Rather, the report indicates that Gruen had normal

distal motor and sensory conductions, normal H responses (sciatic/S1 pathways), and normal

median conduction across both wrists and forearms. Moreover, there was no evidence of

denervation in a root survey of the right leg or denervation in root surveys of the arms. (Tr.

1135). Dr. Grefer reported that the EMG/NCV "does not really show any significant pathology."

(Tr. 1136). Plaintiff fails to allege how the ALJ erred in this regard.

Plaintiff next cites to the November 30, 2018 treatment note from Dr. Grefer (Tr. 1241)

where plaintiff asserts Gruen "had a lot of neck issues[.]" (Doc. 14 at PAGEID 1376). Contrary

to plaintiff's assertion, nothing in this treatment note provides support for the claim that the ALJ

erred "with regard to the frequent reaching and handling finding" at Step Five. (*Id*.). On this

date, Dr. Grefer reported that Gruen had not yet begun therapy, continued to have neck issues,

and had pain going down in his ischial area and pain that went up into the neck and right

shoulder down into the arm. (Tr. 1241). Dr. Grefer reported that Gruen had mildly limited range

of motion and mild spasms in the cervicothoracic and thoracolumbar spine; he had normal range

of motion in his bilateral shoulders, elbows, wrists, hands, knees, ankles, and left hip and normal to mildly limited range of motion in his right hip; he had normal reflexes in his bilateral biceps and knees but low normal/diminished reflexes in his bilateral radial and triceps; he had no crepitus in the bilateral elbows, wrists, hands, knees, ankles, left hip and mild crepitus in the bilateral shoulders and right hip; and he had 4-5 strength in the right knee, ankle, and hip and 5/5 strength in the bilateral shoulders, elbows, wrists, and hands. (Tr. 1240). Plaintiff fails to explain how the cited treatment note from Dr. Grefer provides support for his argument that the ALJ erred in the RFC determination.

Plaintiff likewise cites the January 8, 2019 treatment note from Dr. Yuellig (Tr. 1250-53) and alleges that Gruen's "neck issues" continued into January 2019. (Doc. 14 at PAGEID 1376). While this record notes a history of neck and back pain and stiffness (Tr. 1250), plaintiff's physical exam was essentially normal without any specific complaints of neck pain on examination. (*See* Tr. 1253). Plaintiff fails to explain how this treatment note by Dr. Yuellig detracts from the ALJ's RFC finding.

Plaintiff next cites to the January 18, 2019 medical assessment completed by Dr. Grefer (Tr. 1288-90) in support of the argument that the ALJ erred in finding that Gruen could frequently reach and handle. (Doc. 14 at PAGEID 1376). For the reasons stated above in connection with the third assignment of error, the ALJ did not err by not incorporating Dr. Grefer's opined limitations into Gruen's RFC.

Plaintiff also argues that the ALJ erred in the RFC determination because "the consultative doctor in December, 2016 concluded that Mr. Gruen was unable to lift and carry with the right arm (Tr. 797-800), before the worsening on the neck and shoulders." (Doc. 14 at PAGEID 1376). Dr. Andrew Savoic, who consultatively examined Gruen on December 3, 2016,

opined, in pertinent part, that Gruen would be "unable to reach overhead or lift/carry objects with his right arm." (Tr. 798). The ALJ determined that Dr. Savoic's opinion was not well-supported by medically acceptable clinical or laboratory diagnostic techniques and inconsistent with the other substantial evidence of record. (Tr. 51-53). Plaintiff has not alleged any error in the ALJ's weighing of Dr. Savoic. Accordingly, plaintiff has waived any such argument.

Even so, plaintiff does not explain how the ALJ's RFC determination, i.e., that Gruen could frequently reach with the right upper extremity, could occasionally reach overhead with the right upper extremity, and was able to frequently handle, is not supported by substantial evidence. Plaintiff has not shown that the ALJ erred by failing to fully account for Gruen's alleged impairments and resulting limitations in the RFC finding. Accordingly, the ALJ's RFC is supported by substantial evidence, and plaintiff's second assignment of error regarding the ALJ's RFC assessment should be overruled.

Within this assignment of error, plaintiff also alleges that the ALJ erred by failing to include the use of a cane in the RFC. (Doc. 14 at PAGEID 1377). Plaintiff alleges, in the entirety, that "Dr. Yuellig prescribed a cane for him [Gruen] in August, 2018, noted by Mr. Gruen at his hearing (Tr. 134 and verified at Tr. 487)! With the cane he would not be able to stand and or walk for six hours each day and also use both hands to sustain unskilled light work, lifting 10-20 pounds also on this." (*Id*.).

Troublingly, plaintiff fails to mention in the Statement of Specific Errors that the alleged prescription for the cane from Dr. Yuellig, which is the basis for this assignment of error, was not part of the medical record before the ALJ, but rather, was presented for the first time as an exhibit to the Appeals Council. (Tr. 487). The Court cannot consider evidence presented for the first time to the Appeals Council in deciding whether to uphold or reverse the ALJ's decision

20

under sentence four of 42 U.S.C. § 405(g). *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993)).

Rather, when evidence is presented to the Appeals Council for the first time, the only issue to decide is whether in light of that evidence the matter should be remanded under sentence six of § 405(g) for further administrative proceedings. A remand under sentence six is warranted only if plaintiff shows "that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Id.* (citing *Cotton*, 2 F.3d at 696).

Plaintiff, however, has not requested a sentence six remand or argued that one is warranted.[6] Plaintiff has failed to show that this evidence is new and that good cause exists for the failure to include this information in the prior ALJ proceeding. *See* 42 U.S.C. § 405(g), Sentence Six; *see also Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 549 (6th Cir. 2002) (citing 42 U.S.C. § 405(g), Sentence Six; *Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1233 (6th Cir. 1993)). Accordingly, there is no basis for ordering a remand under Sentence Six of 42 U.S.C. § 405(g).

In any event, to establish that a hand-held assistive device is medically required, not only must plaintiff show medical documentation establishing the need for the device, there must also be medical documentation "describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). *See Krieger v. Comm'r of Soc. Sec.*, No. 2:18-cv-876, 2019 WL 1146356, at *6 (S.D. Ohio Mar. 13, 2019), *report and*

---

[6] Plaintiff mentions in the reply brief that the Court can review evidence submitted to the Appeals council by ordering a remand under Sentence Six of 42 U.S.C. § 405(g). (Doc. 22 at PAGEID 1473-74). Plaintiff, however, may not raise this issue for the first time in the reply brief. *See Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986). *See also Bishop v. Oakstone Academy*, 477 F. Supp. 2d 876, 889 (S.D. Ohio 2007) ("[I]t is well established that a moving party may not raise new issues for the first time in its reply brief"). The Court therefore declines to review any new claims of error raised in plaintiff's reply brief.

*recommendation adopted*, 2019 WL 3955407 (S.D. Ohio Aug. 22, 2019) (citing *Id.*). *See also Strain v. Comm'r of Soc. Sec.*, No. 5:12-cv-1368, 2013 WL 3947160, at *2 (N.D. Ohio Aug. 1, 2013) (the plaintiff failed to "meet her burden to demonstrate through the use of clinical evidence that the cane is necessary"); *Scroggins v. Comm'r of Soc. Sec.*, No. 16-11913, 2017 WL 4230650, at *4 (E.D. Mich. Sept. 25, 2017) (ALJ's conclusion that plaintiff failed to establish need for a cane was reasonable, even though she testified she was prescribed a cane and documentation showed she received a cane, given there was no specific evidence in the record establishing that she needed the cane and no medical documentation describing circumstances in which a cane was required); *Ross v. Comm'r of Soc. Sec.*, No. 2:17-cv-169, 2018 WL 580157, at *6 (S.D. Ohio Jan. 29, 2018) (ALJ decision that the claimant did not medically require a cane was substantially supported where the records regarding her use of a cane were inconsistent, she had been observed ambulating normally, and no doctor opined that she needed a cane and circumstances in which a cane was required). Even if the Court could consider the evidence now cited by plaintiff, which it cannot, plaintiff has failed to direct the Court's attention to any medical documentation describing the circumstances under which Gruen needed to use a cane.

The Court therefore recommends that plaintiff's assignment of error relating to the ALJ's failure to include a cane in Gruen's RFC be denied.

### 3. The ALJ did not err in failing to consider what is individually stressful to Gruen (first assignment of error).

In the first assignment of error, plaintiff argues that the ALJ erred "under Ruling 85-15 (1985) in failing to assess what is individually stressful to Mr. Gruen in sustaining work for 40 hours a week." (Doc. 14 at PAGEID 1375).

Social Security Ruling 85-15 states, in pertinent part: "[b]ecause response to the demands of work is highly individualized, . . . [a]ny impairment-related limitations created by an

22

individual's response to demands of work . . . must be reflected in the RFC assessment." SSR 85-15, 1985 WL 56857, at *6 (January 1, 1985). It is well-established, however, that Social Security Ruling 85-15 "provides guidance only for cases in which the claimant asserts 'solely nonexertional impairments.'" *Doneworth v. Shalala*, No. 94-4290, 1996 WL 26922, at *4 (6th Cir. Jan. 23, 1996) (citing *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1996) (in turn citing SSR 85-15)). *See also Johnson v. Comm'r of Soc. Sec.*, No. 14-cv-14713, 2015 WL 12670490, at *10 (E.D. Mich. Sept. 18, 2015), *report and recommendation adopted*, 2015 WL 5996404 (E.D. Mich. Oct. 15, 2015) ("SSR 85-15 does not apply to cases where both exertional and non-exertional impairments are alleged, and in this case Johnson has alleged that she is disabled by both."); *Rosenkranz v. Comm'r of Soc., Sec.*, No. 1:13-cv-535, 2014 WL 1270588, at *6 (N.D. Ohio Mar. 26, 2014) (Since Rosenkranz is asserting both exertional and nonexertional impairments, SSR 85-15 does not apply to her."). Accordingly, plaintiff's assignment based on SSR 85-85 is without merit and should be overruled because plaintiff alleges both exertional and nonexertional limitations (*see* Doc. 14).

Even so, plaintiff's contention that the ALJ failed to make an individualized evaluation of Gruen's stress when formulating the RFC should also be overruled on the merits. The ALJ's RFC provides, in pertinent part, that Gruen "is limited to work performed in a low-stress environment, designed as free of fast-paced production requirements, involves only simple work-related decisions, few workplace changes, changes can be explained in advance, no interaction with the general public, and no more than occasional interaction with co-workers and supervisors." (Tr. 26).

In formulating the RFC, the ALJ did not just limit Gruen to "low-stress" jobs. Rather, the ALJ accounted for the Gruen's individualized difficulties by limiting Gruen to an

environment free of fast-paced production requirements that involve only simple work-related decisions, few workplace changes, with any changes explained in advance, no interaction with the general public, and no more than occasional interaction with co-workers and supervisors. (*Id*.). The ALJ's findings are supported by substantial evidence, and the ALJ accounted for Gruen's individualized difficulties in the RFC. Therefore, the Court recommends that plaintiff's first assignment of error be overruled.

### 4. The ALJ's evaluation of Gruen's subjective allegations of pain and limitations is supported by substantial evidence (fourth assignment of error).

In the fourth assignment of error, plaintiff alleges that the ALJ erred in evaluating Gruen's subjective allegations of pain and limitations. (Doc. 14 at PAGEID 1379-81). Plaintiff argues that the ALJ erred because (1) there are objective medical findings related to Gruen's physical and psychological impairments in the record; (2) Gruen takes a number of medications for his impairments and his daily activities are limited due to his impairments; and (3) Gruen has a good work record with excellent earnings. (*Id*.). The Commissioner argues that substantial evidence supports the ALJ's determination as to Gruen's subjective statements about the intensity, persistence, and limiting effects of Gruen's symptoms and impairments. (Doc. 21 at PAGEID 1462-67).

The ALJ did not err in evaluating Gruen's subjective complaints of pain and other symptoms. Title 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p, 2016 WL 1119029, *3 (March 16, 2016) describe a two-part process for evaluating an individual's subjective statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other

evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *See also* 20 C.F.R. § 404.1529(c)(3). The ALJ's assessment of a claimant's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record. *Rogers*, 486 F.3d at 247.

Plaintiff has not shown that the ALJ erred in evaluating Gruen's subjective complaints about his symptoms and pain. The ALJ thoroughly reviewed the medical evidence related to Gruen's impairments (Tr. 30-49) and gave several reasons for why he did not find Gruen's subjective complaints to be fully supported by and consistent with the medical records (Tr. 30-31, 39). The ALJ specifically noted among other reasons that the record as a whole did not support Gruen's allegations of disabling mental or physical impairments. (Tr. 30). For example, the ALJ noted, inter alia, that the objective evidence showed only mild abnormalities, Gruen made statements to his providers that were inconsistent with other medical records, and Gruen reported to some providers that his medications helped control his symptoms without side-effects. (Tr. 30-31, 39).

Plaintiff points to the January 2019 letter by Dr. Grefer (Tr. 1286-87) as evidence of "objective medical findings related to the physical and psychological impairments." (Doc. 14 at PAGEID 1380). As previously discussed in connection with plaintiff's third assignment of error, the ALJ considered Dr. Grefer's 2019 letter (Tr. 59-61), and substantial evidence supports the

ALJ's finding that Dr. Grefer's opinion was not entitled to controlling weight but only little weight. Therefore, Dr. Grefer's opinion does not support plaintiff's allegations of debilitating pain and limitations.

Plaintiff also argues that the ALJ erred in evaluating Gruen's subjective allegations of pain and limitations because Gruen "has taken a number of medications for his impairments" and his "daily activities are very limited." (Doc. 14 at PAGEID 1380). Plaintiff, however, has not explained or cited to any evidence in the record how, if at all, Gruen's medications have impacted his ability to work and how the ALJ erred by failing to consider this evidence. To the contrary, the ALJ considered Gruen's use of medications by stating: "The claimant testified he took several prescription medications for, among other things, pain, inflammation, anxiety and panic attacks. He stated his mediations helped, but caused some negative side-effects, such as constipation and diarrhea a couple of times per week." (Tr. 28). Plaintiff also argues that Gruen had a "good work record with excellent earnings (Tr. 607-608). This also helps him." (Doc. 14 at PAGEID 1380). Plaintiff, however, fails to explain how Gruen's alleged work record and earnings cast doubt on the ALJ's weighing of Gruen's subjective allegations of pain and limitations.

Plaintiff has not pointed to any specific evidence in the record to show the ALJ's evaluation of Gruen's subjective complaints of pain and limitations was flawed or was not substantially supported. Accordingly, the Court recommends that plaintiff's fourth assignment of error be overruled.

### 5. The ALJ committed no error in relying on answers to hypothetical questions posed to the VE (fifth assignment of error).

In the fifth assignment of error, plaintiff alleges the ALJ erred at Step Five of the sequential evaluation process by posing "improper hypothetical questions to the vocational

expert at Tr. 173-177." (Doc. 14 at PAGEID 1381). Plaintiff recounts the arguments put forth in the first, second, and third assignments of error and contends that the ALJ's questions were "improper" because the ALJ (1) "defined low stress work for the general public and not for the individual Mr. Gruen (see argument #1 on this)"; (2) "left out the need for a cane while standing and/or walking for six hours a day"; and (3) "left out the four supported limitations forms of the treating sources noted in error #3 above." (*Id*.). The Commissioner argues that the ALJ properly relied upon the VE's response to a hypothetical that matched the RFC. (Doc. 21 at PAGEID 1467-68).

Once the ALJ finds that a claimant is unable to perform his past relevant work, the burden shifts to the ALJ to show that the claimant is able to perform other substantial gainful activity that exists in the national economy. *Pasco v. Comm'r of Soc. Sec*., 137 F. App'x 828, 845 (6th Cir. 2005) (citing *Varley v. Sec'y of Health & Human Servs*., 820 F.2d 777, 779 (6th Cir. 1987)). The ALJ's reliance on the testimony of a VE in response to a hypothetical question may serve as substantial evidence that the claimant has the ability to perform specific jobs, but only if the hypothetical question accurately portrays the claimant's physical and mental impairments. *Id*. (citing *Varley*, 820 F.2d at 779). *See also Thomas v. Comm'r of Soc. Sec*., 550 F. App'x 289, 290 (6th Cir. 2014) (quoting *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001)). In posing a hypothetical question to the VE, the ALJ is not required to incorporate those limitations the ALJ reasonably finds are not supported by the medical and other evidence. *See Griffeth v. Comm'r of Soc. Sec*., 217 F. App'x 425, 429 (6th Cir. 2007). However, the ALJ errs if he relies on VE testimony given in response to a hypothetical question that omits restrictions the ALJ improperly found were not supported by the evidence. *See White v. Comm'r of Soc. Sec*., 312 F. App'x 779, 789-90 (6th Cir. 2009).

Plaintiff has not shown that the ALJ erred by relying on VE testimony that did not accurately portray Gruen's impairments or functional limitations.  As explained above, the ALJ was not required to include limitations in the hypothetical to the VE that were discounted on the ground they were not supported by the record.  For the reasons explained in connection with plaintiff's first, second, and third assignments of error, the ALJ's evaluation of medical source opinions and inclusion of corresponding limitations in the RFC is substantially supported by the evidence.  The ALJ's hypothetical questions to the VE incorporated all of the functional limitations that the ALJ found to be credible and supported by the evidence.  (*See* Tr. 172-77).  Plaintiff has not shown that the ALJ omitted from the hypothetical any functional limitations that were substantially supported by the evidence.  Therefore, the Court recommends that plaintiff's fifth assignment of error be overruled.

**III. Conclusion**

For the reasons stated herein, the undersigned recommends that the ALJ's decision be **AFFIRMED** and that this matter be closed on the docket of the Court.

Date:  11/24/2021

Karen L. Litkovitz
Chief United States Magistrate Judge

28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

PATRICIA BIEDERMAN, as the successor      Case No. 1:20-cv-356
and representative of the Estate of          Black, J.
Dennis Gruen,                             Litkovitz, M.J.
        Plaintiff,

        vs.

COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).